IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ANDRES SALAZAR                                                                          PLAINTIFF

v.                                        Civil No. 13-2186

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Plaintiff, Andres Salazar, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (Commissioner)

denying his claims for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  *See*

42 U.S.C. § 405(g).

## I.      Procedural Background:

Plaintiff filed his DIB and SSI applications on September 8, 2010[2], alleging an amended

onset date of December 15, 2009, due to social phobia, major depressive disorder, hypertension,

post-traumatic stress disorder, diabetes mellitus, obesity, degenerative changes of the bilateral

hips, and degenerative changes of the lumbar spine.  Tr. 12, 167-173, 174-177, 214, 217-219,

233-234, 256.  The Commissioner denied Plaintiff's applications initially and on reconsideration.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner
Michael J. Astrue as the defendant in this suit.

[2]Plaintiff filed previous applications for benefits in June 2006, resulting in a final unfavorable decision
on May 27, 2009.  Tr. 101-108.

Tr. 112-115, 121-131.  An administrative hearing was held on June 7, 2011.  Tr. 30-57.  Plaintiff

was present and represented by counsel.

At the time of the hearing, Plaintiff was 44 years old and possessed a limited education.

Tr. 23, 64-65.  He had past relevant work (PRW) experience as a laborer and line worker.  Tr.

215, 252.

On January 25, 2012, the Administrative Law Judge ("ALJ") concluded that, although

severe, Plaintiff's social phobia, major depressive disorder, hypertension, post-traumatic stress

disorder, diabetes mellitus, obesity, degenerative changes of the bilateral hips, and degenerative

changes of the lumbar spine did not meet or equal any Appendix 1 listing.  Tr. 14-17.  The ALJ

determined that Plaintiff maintained the residual functional capacity ("RFC") to perform light

work.  Further, he concluded that Plaintiff could only occasionally climb ramps and stairs,

balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; could

perform simple, routine, repetitive tasks involving only simple work-related decisions with few,

if any, workplace changes; and could have occasional contact with co-workers, supervisors, and

the general public.   With the assistance of a vocational expert, the ALJ found Plaintiff could

perform work as a compression molding machine tender, riveting machine operator, and bindery

machine feeder and offbearer.  Tr. 24.

Plaintiff appealed this decision to the Appeals Council, but said request for review was

denied on June 7, 2013.  Tr. 1-6, 7-8. Subsequently, Plaintiff filed this action.  ECF No. 1.  Both

parties have filed appeal briefs, and the case is now ready for decision.   ECF Nos. 15.

AO72A
(Rev. 8/82)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

3

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)-(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.   Discussion:

At step three of the sequential analysis, the ALJ must determine whether the Plaintiff has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *See* 20 C. F. R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 419.926.  The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on one's ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.  20 CFR Part 404, Subpart P, Appendix 1, §

AO72A
(Rev. 8/82)

12.00(A).   Severity is measured according to the functional limitations imposed by the individual's medically determinable mental impairment(s).   Functional limitations are divided into four categories: activities of daily living; social functioning; concentration, persistence, or pace; and, episodes of decompensation.   *Id*. § 12.00 (C).   To meet a listing, an individual's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or, repeated episodes of decompensation, each of extended duration.   *Id*.   A "marked" limitation is more than moderate but less than extreme, and may arise when several activities or functions are impaired, or when only one is impaired, if the degree of limitation is such as to interfere seriously with one's ability to function independently, appropriately, effectively, and on a sustained basis.   *See* §§ 404.1520a and 416.920a.

Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.   *Id.* §12.00 (C)(4)*.*   Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).   *Id*.   Evidence of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.   *Id.*

AO72A
(Rev. 8/82)

The term repeated episodes of decompensation, each of extended duration means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. *Id*. If the individual has experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, a determination must be made as to whether the functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence. *Id*.

After concluding that Plaintiff's social phobia, major depressive disorder and PTSD were severe impairments, the ALJ determined that the Plaintiff had only moderate limitations in the area of social functioning. He used Plaintiff's ability to reside in a group home, shop in pubic stores, and to attend diabetes classes to support his assertion that Plaintiff's social limitations were less than marked. However, evidence suggests Plaintiff is paranoid and anxious around crowds. Tr. He has repeatedly indicated that he has no friends and limited social interaction. And, he reported shopping in stores for groceries only once per month. Further, Dr. Ott evaluated Plaintiff and diagnosed him with social phobia, noting that he would have significant problems getting along with other people. Tr. 342-352. But, he was not asked to complete a mental RFC assessment. This is bothersome to the undersigned because the ALJ found Plaintiff could have "occasional contact with co-workers, supervisors, and the general public." Without an assessment from an examining mental health source, there is no basis in the record for a determination that Plaintiff's social limitations were moderate, or that he could have "occasional" contact with others. *See Pratt v. Sullivan,* ,956 F.2d 830, 834 (8th Cir. 1992) (holding ALJ may not substitute his own unsubstantiated conclusion concerning a mental impairment for the express diagnoses of examining psychiatrists and psychologist).

AO72A
(Rev. 8/82)

Without discussion, the ALJ also summarily concluded that Plaintiff had no episodes of decompensation.  However, the evidence reveals that on January 26, 2010 a petition for treatment order was filed by an Assistant District Attorney who believed Plaintiff's behavior and history was symptomatic of a demonstrable mental illness, and that as a result of said illness, Plaintiff was incapable of making appropriate decisions regarding his care and treatment and posed a danger both to himself and others.  Tr. 203-204.

From January 28, 2010, until February 3, 2010, Plaintiff was hospitalized at Griffin Memorial Hospital due to suicidal thoughts.  Tr. 268-292.  He was delusional and experiencing auditory hallucinations.  Plaintiff was diagnosed with major depressive disorder with psychotic features and assessed with a Global Assessment of Functioning ("GAF") score of 50.  In spite of Plaintiff's history of drug abuse, a urine drug screen performed at this time was negative.  Tr. 288.

On March 3, 2010, Plaintiff was hospitalized at Red Rock Behavioral Health Services due to his depression.  Tr. 295-310.  His medication had recently been changed, causing his depression to worsen.  He reported anhedonia, crying spells, severe anxiety, and feeling as though life were not worth living.  Plaintiff was diagnosed with mood disorder not otherwise specified and morbid obesity.  He was prescribed Abilify, and discharged on March 8, 2010.  His GAF was noted to be 27[3].

From May 16, 2010, until May 18, 2010, Plaintiff was again hospitalized at Baptist Health Medical Center due to increased suicidal ideations.  Tr. 329 -343.  Plaintiff also reported

---

[3]A GAF of 27 indicates an inability to function in almost all areas.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

AO72A
(Rev. 8/82)

that his paranoia had worsened since being released from prison in 2009, and that he was experiencing flashbacks from an automobile accident that occurred when he was a teenager in resulting in the death of three of his friends.  Plaintiff was again diagnosed with major depressive disorder with psychosis and rule out PTSD.  At the time of admission, his GAF was 20 and, although his condition did respond to medication, his discharge GAF was only 42[4].

Because it is clear that Plaintiff did experience at least 3 episodes of decompensation, we feel remand is necessary to allow the ALJ to determine whether or not these episodes meet or medically equal the definition of episodes of decompensation of extended duration.  The ALJ is reminded that he is not free to ignore medical evidence, and must consider the record as a whole.  *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000).

## IV.   Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

---

[4]A GAF of 42 is indicative of a serious impairment in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

AO72A
(Rev. 8/82)

DATED this <u>25th</u> day of April 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)